# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Michels Corporation,** | |
| Plaintiff, | |
| v. | No. 12-cv-4144 |
| **Central States, Southeast and Southwest Areas Pension Fund, et al.,** | Judge Norgle |
| Defendants. | |
| **Pipe Line Contractors Association,** | **PLAINTIFF MICHELS CORPORATION'S RESPONSES TO CENTRAL STATES' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS** |
| Intervening Plaintiff, | |
| v. | |
| **Central States, Southeast and Southwest Areas Pension Fund, et al.,** | |
| Defendants. | |
| **Central States Southeast and Southwest Areas Pension Fund, and Arthur H. Bunte, Jr.,** | |
| Counterclaim Plaintiffs, | |
| v. | |
| **Michels Corporation,** | |
| Counterclaim Defendant, and | |
| **Apex Pipeline Services, Inc., et al.,** | |
| Additional Counterclaim Defendants. | |

**PLAINTIFF MICHELS CORPORATION'S RESPONSES TO CENTRAL STATES'**
**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Plaintiff Michels Corporation ("Michels") responds to Counterclaim Defendants Central States Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., as Trustee's (collectively "Central States") Local Rule 56.1 Statement of Material Facts as follows:

## PARTIES

1. The Central States, Southeast and Southwest Areas Pension Fund ("Central States") is a multiemployer pension benefit plan and trust established and governed under the Employee Retirement Income Security Act of 1974, as amended. Central States is primarily funded by pension contributions made by multiple participating employers. These employers agree to make pension contributions to Central States under various collective bargaining agreements negotiated with the International Brotherhood of Teamsters ("IBT"), and its affiliated local unions. Affidavit of Peter Priede, Exhibit 1, ¶4 (hereinafter "Priede Aff., ¶_").

**RESPONSE:** Admitted as to the first sentence. As to the second sentence, admitted for purposes of the pending Motions only, for Michels lacks knowledge as to the truth of the assertion because the parties have not conducted discovery to date. Michels does not seek to conduct such discovery because Michels contends that the fact is irrelevant to the pending Motions.

2. The Fund is administered by its Trustees, who are collectively the plan sponsor of the Fund within the meaning of §4001(a)(10)(A) of ERISA, 29 U.S.C. §1301(a)(10)(A). The Trustees administer the Fund at its offices at 9377 West Higgins Road, Rosemont, Cook County, Illinois. Priede Aff., ¶¶3 and 5.

**RESPONSE:** Admitted.

3. Arthur H. Bunte, Jr., is a present Trustee of the Fund and a plan sponsor. Priede Aff., ¶6.

**RESPONSE:** Admitted that Mr. Bunte is a present Trustee, denied that it is possible for a trustee to be a plan sponsor, as the trustees collectively are the plan sponsor, as is alleged and admitted in the preceding paragraph.

4. The Counter Defendant, Michels Corporation ("Michels") is an employer organized under the laws of the State of Wisconsin. It is an "employer" and "party-in interest" as those terms are defined by §§3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§1002(5) and 1002(14)(C). Michels Statement of Material Facts, ¶1 (hereinafter "MSMF, ¶_").

**RESPONSE:** Admitted.

5. The Pipe Line Contractors Association ("PLCA") is an association which, among other things, negotiates collective bargaining agreements on behalf of member employers with labor unions that represent certain employees of those member employers. MSMF, ¶6.

**RESPONSE:** Admitted.

6. At all relevant times Michels has been a member of the PLCA. MSMF, ¶7.

**RESPONSE:** Admitted.

7. At all relevant times certain employees of Michels have been represented for purposes of collective bargaining by the IBT. MSMF, ¶8.

**RESPONSE:** Admitted.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331; Section 301 of the LMRA, 29 U.S.C. § 185. MSMF,¶ 4.

**RESPONSE:** Admitted.

9. Venue properly lies in this Court pursuant to the venue selection clause of the Fund's Trust. Venue is also appropriate under §502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), because the Fund is administered in, and maintains its principal place of business in, Rosemont, Cook County, Illinois. Ex. A to Priede Aff. MSMF, ¶5.

**RESPONSE:** Admitted.

## FACTS AND GOVERNING DOCUMENTS

    A.    **The National Pipe Line Agreement**

    10.    In February of 2006, the National Pipe Line Agreement ("NPLA") was signed by the PLCA and the IBT. Administrative Record, Exhibit A to the Affidavit of James Condon, pgs. 88-113 (hereinafter "AR at 88-113").

    **RESPONSE:**    Admitted.

    11.    Article V, Section I of the NPLA provides, in part, as follows:

> I. Fringe Benefit contributions under this Agreement shall be paid for all hours worked. All pension and welfare contributions for Travelers will be remitted to the Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds. Contributions for fringe benefits for all Non-Travelers will be remitted to the local funds having jurisdiction over the work [<u>which in many instances is the Central States Pension Fund</u>].

AR at 98.

    **RESPONSE:**    Admitted as to all except the last line of the purported quotation, placed in brackets (and underlined for clear identification), as neither this text nor any other text which reasonably could be construed to have the meaning of the bracketed text appears in the cited document.

    12.    Article XV(C) of the NPLA provides that, "The provisions of this Agreement shall continue in full force and effect until January 31, 2011, and thereafter from year to year unless terminated at the option of either party after sixty (60) days' notice in writing to the other. AR at 103.

    **RESPONSE:**    Admitted.

    13.    Schedule B of the NPLA is the National Pipeline Participation Agreement. MSMF, ¶17

    **RESPONSE:**    Admitted.

14. The National Pipeline Participation Agreement provides, in part:

> NOW, THEREFORE, IT IS AGREED by and between the undersigned Employer and the International Brotherhood of Teamsters that such Employer hereby subscribes to the various agreements and declarations of trust and policies and procedures of the particular funds into which such Employer will be required to make contributions pursuant to the National Pipe Line Agreement, and agrees to be bound thereby and to amendments made or to be made thereto; and authorizes the parties to such trust agreements to name the trustees and successor trustees, and to administer the trusts; and does hereby ratify and accept such trustees and the terms and conditions of said trusts as fully and as completely as if made by the undersigned Employer; provided, however, that no amendments or provisions of said trust agreements shall bind the Employer for any financial obligations or dues delinquency determinations beyond that set forth in the National Pipe Line Agreement pursuant to which such contributions are made.

**RESPONSE:**    Admitted.


15. Michels was a party to the NPLA. MSMF, ¶14.

**RESPONSE:**    Admitted.


B.   **The Pension Fund's Trust Agreement**

16. Article III of the Fund's Trust Agreement covers "Contributions and Collections." Article III, Section 1, provides, in part, as follows:

> Each Employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority...Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:
>
> Contracts Department
> Central States, Southeast and Southwest Areas Pension Fund
> 9377 West Higgins Road
> Rosemont, Illinois 60018-4938.

> Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; and any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the collective bargaining agreement which shall alone be enforceable. Except as provided in this Section, Section 7(b) of Article III [dealing with union decertification] and Section 20 of Article IV [dealing with terminations initiated by the Trustees], the obligation to make such contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives a) a signed contract that eliminates or reduces the duty to contribute to the Fund or b) written notification that the Employer has lawfully implemented a proposal to withdraw from the Fund or reduce its contributions at the above-specified address. The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in case of strike after contract termination, unless the parties mutually agree otherwise.

Ex. A to Priede Aff., Pgs. 8-9.

      **RESPONSE:**      Admitted.

17. The Trust Agreement, at Article V, Section 2, states, in part:

All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund.

Ex. A to Priede Aff., Pg. 19.

**RESPONSE:** Admitted.

18. The Trust Agreement, at Article III, Section 7(a), states, "An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement accepted by the Fund on the terms stated in that collective bargaining agreement. Ex. A to Priede Aff., Pg. 11.

**RESPONSE:** Admitted.

### C. The Fund's Governing Plan Document

19. Section 3.01(a)(6) of the Fund's Plan Document provides that: "A Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions...for the entire term of such Collective Bargaining Agreement." Ex. B to Priede Aff., Pg. 29.

**RESPONSE:** Admitted that this is an accurate quotation (which is at page 23, not page 29).

### FACTS GIVING RISE TO THE DISPUTE

20. The PLCA and the IBT agreed to a first month-long extension of the CBA, to February 28, 2011, as negotiations continued. The parties then agreed to a second month-long extension, to March 31, 2011; a third month-long extension, to April 30, 2011; a fourth month-long extension, to May 31, 2011; a fifth month-long extension, to June 30, 2011; a sixth month-long extension, to July 31, 2011; a seventh month-long extension to August 31, 2011; and then an eighth, two-and-a-half-month-long extension, to November 15, 2011. MSMF, ¶24.

**RESPONSE:** Admitted.

21. On November 15, 2011, the PLCA and the IBT signed a document titled "Amendment To And Extension Of Collective Bargaining Agreement Between Pipeline Contractors Association and the International Brotherhood of Teamsters." AR at 120.

**RESPONSE:** Admitted.

22. In a letter dated November 16, 2011, an attorney for the PLCA asserted that the duty of certain PLCA employers to contribute to the Pension Fund under the NPLA terminated on November 16, 2011. AR at 34-38.

**RESPONSE:** Admitted.

23.  By letter dated January 30, 2012, the Fund advised the IBT as follows:

> [N]either the correspondence that legal counsel (Akin Gump) for various PLCA members delivered to the Fund's offices on November 16, 2011, nor any of the other correspondence forwarded to the Fund by or on behalf of any PLCA members at any time during 2011, was effective to terminate any of the PLCA members' obligations to contribute to the Fund. Consequently, it is the Pension Fund's position that during calendar year 2011 none of the PLCA members withdrew from the Pension Fund or terminated their obligations to contribute to the Fund. However, the Pension Fund does not have sufficient information at this time to determine whether (or when), subsequent to year-end 2011, any of the PLCA members withdrew from the Fund or otherwise ceased to have an obligation to contribute to the Fund on behalf of their employees.

AR at 50.

**RESPONSE:** Admitted that the Fund wrote a letter containing the quoted language. Denied to the extent that Paragraph 23 purports to assert that the quoted language is accurate, as the cited evidence does not support that assertion.

24.  On March 15, 2012, Michels filed suit against the Fund seeking a declaration that its duty to contribute to the Fund ceased on November 15, 2011. AR at 123-139.

**RESPONSE:** Admitted.

25.  In June, 2012, a new NPLA was entered into between the PLCA and the IBT, the acceptance of which was provided to the Fund on October 9, 2012. Priede Aff. ¶11.

**RESPONSE:** Admitted that on May 31, 2012, a new NPLA was entered into between the PLCA and the IBT, as indicated in the cited materials. Also admitted that a letter was provided to the Fund on October 9, 2012, which is attached to the Priede Aff. and confirmed the Fund's knowledge of the 2012 PLCA as well as other matters. The characterization of the October 2, 2012 (which apparently was received on October 9, 2012) as an acceptance of the 2012 PLCA Agreement is denied.

26. Michels has executed the Fund's Participation Agreements binding the company to the terms of the Pension Fund Trust Agreement. AR at 290-297.

**RESPONSE:** Admitted that the documents cited were executed by Michels on or about the dates indicated. Denied to the extent that this assertion purports to suggest that any of these, other than the most recent one, which the parties agree constituted Exhibit B to the 2006 CBA as alleged and admitted in paragraph 13 above, were binding on Michels during or after the term of the 2006 CBA as unsupported by the cited evidence.

27. The Fund continued to accept contributions and bill higher rates beyond January 1, 2011. Fringe benefit rates beyond 01/31/2011 were provided to the Fund and Michels pursuant to (1) attachments to the Pipe Line Job Notifications from the IBT, (2) Pipeline Construction Pre-Job Form, and/or (3) PLCA notification. Michels and other members of the PLCA paid those higher rates. Priede Aff., ¶ 10.

**RESPONSE:** Admitted as written, but denied to the extent the allegation purports to assert that this continued after November 15, 2011 as unsupported by the cited evidence.

Respectfully submitted,

/s/ David K. Haase
David K. Haase

David K. Haase
Michael G. Congiu
LITTLER MENDELSON, P.C.
A Professional Corporation
321 North Clark Street
Suite 1000
Chicago, IL 60654
312.372.5520

Susan K. Hoffman
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102
267.402.3015

*Attorneys for Plaintiff*
*Michels Corporation*

Dated:  March 15, 2013

-11-

## CERTIFICATE OF SERVICE

I, Michael G. Congiu, an attorney hereby certify that on March 15, 2013, I electronically filed ***Plaintiff Michels Corporation's Responses to Central States' Local Rule 56.1 Statement of Material Facts*** using the CM/ECF filing system which will send such notification to the attorneys of record in the above-captioned litigation.

        /s/ Michael G. Congiu
        Michael G. Congiu

Firmwide:117757151.1 067561.1003
3/15/13